## GRIFFIN v. LOUISIANA DELTA HARDWOOD LUMBER CO., Inc.

### No. 5974.

Court of Appeal of Louisiana. Second Circuit.

May 29, 1939.

Rehearing Denied June 28, 1939.

P. S. Gaharan, Jr., of Jena, and Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, for appellant.

J. B. Nachman, of Alexandria, for appellee.

DREW, Judge.

The judge of the lower court has favored us with a written opinion in which he has set out the issues and correctly found the facts. With some deletions we quote the opinion:

"The plaintiff brings this suit under the Employers' Liability Act (No. 20 of 1914, and the subsequent amendments thereto). He alleges that while he was in the employ of the defendant company performing his duties as a lumber grader on the green chain, acting in the course of this duty and employment, that he received a hernia to his left side and an injury to the rings of the right side from an abdominal strain; and pursuant to the request of his employer, he was operated on for hernia; that on one side there was a recurrence which caused a second operation and which has left him in such a condition that he is not able to perform any manual labor, and he is entitled to compensation under the law for four hundred weeks.

"The defendant admits the employment; admits the wages; admits that it paid compensation to plaintiff from the 26th of October, 1937, until about the 18th of January, 1938, and that plaintiff was operated on about the 30th of October, 1937, at their request. The plaintiff returned to work about the 24th of January, 1938, and worked until the 14th of April, 1938, when the plaintiff was again operated on, and compensation was paid until July, 1938. The defense is that the plaintiff was not injured while in its employ and in performing the duties incidental to his employment, and is now able to perform manual labor.

"The plaintiff is a married man, has a wife and child, and is around thirty-five years of age. He began working for the defendant about September, 1933. Prior to the employment, Dr. D. D. Lane, who was the defendant's local doctor, gave the plaintiff a physical examination and gave him a grade as 'A-1' rating, finding no physical ailments or defects. The plaintiff began work in the machine shops and did manual labor for several years, and about June, 1935, the plaintiff was again examined by Dr. Lane, the defendant's physician, and was given a rating as 'B'. He reported that the plaintiff had a small opening in the inguinal ring on the left but the inguinal ring on the right was perfect. The plaintiff, after this examination, continued to work for the defendant in various manual jobs and finally he secured the job as lumber grader on the green chain. This chain brings the green lumber and timber from the mill after the log has been cut into lumber. This lumber was of various lengths, thicknesses and widths and some were very heavy. The plaintiff had to stand on the green chain and straighten the planks and turn them over piece by piece and mark the grade on the lumber.

"On the 26th of October, 1937, while stooping and turning a heavy plank, he states he felt a tearing and a burning sensation in his abdominal quadrant which caused him such severe pain that he was

unable to continue his labors. He sent for a man to relieve him and after being relieved, he immediately reported to the office of Dr. Trax, who is the defendant's local doctor, and upon examination the doctor advised the plaintiff that he had a hernia on the left side and his external ring on the right was enlarged or dilated to the extent that you could insert two fingers in the ring. Prior to this occasion —about August—while in this line of work plaintiff testifies that he felt on one occasion a burning sensation in his abdominal quadrant but continued to work, and that was the first occasion he had ever suffered any such sensation; and that he was bothered no more until the 26th of October, 1937, when he had the symptoms just mentioned.

"After the plaintiff was examined by Dr. Trax at Trout on October 26th, 1937, he was carried to Shreveport to Dr. Clint Willis, who was employed and did all of the surgical work for the defendant company. Dr. Willis, upon examination, advised plaintiff that he had a hernia on the left side and that the external inguinal ring on the right side was greatly enlarged and dilated and advised an operation for the hernia, and also for the repair of the right inguinal external ring. The plaintiff readily consented to this operation and on the 30th of October, 1937, he was operated on by Dr. Clint Willis. According to the doctor, he performed a complete hernia operation on the left side and closed the right inguinal ring by what is known as a figure '8'. The plaintiff remained in the hospital for two or three weeks, then returned to his home and was pronounced ready for work by the local doctor, Dr. Trax, and on the 24th of January, 1938, plaintiff was given a job as checker and timekeeper, which he filled until April 14th, 1938, at which time there became a knot like a kernel in his right side. He reported to the defendant's local doctor, Dr. Trax, and was advised to report again to Dr. Clint Willis in Shreveport. Mr. Caldwell, the adjuster for the insurance company that was carrying the insurance for the defendant company, took the plaintiff to Dr. Willis in Shreveport, and upon examination Dr. Willis stated that he had a hernia or recurrence of a hernia on the right side, and advised an operation. On account of the sickness of plaintiff's wife, the operation was delayed until about the 24th of May, 1938, at which time the plain-tiff again submitted to an operation. Dr. Willis again operated on the right side and the plaintiff remained in the hospital for about fourteen days, and returned home. He received compensation from the defendant from April 14th until July 17th, at which time the doctor for the defendant company pronounced plaintiff well and discontinued his compensation and refused to permit the plaintiff to work longer for the company.

"Plaintiff says that he is not able to do any manual work; that he suffers continual pains and burning sensations in his right side. The plaintiff's testimony about not being able to do manual labor is borne out by his wife, his mother-in-law, Mrs. Whatley, and a brother-in-law, J. C. Pyle, who all state that plaintiff has not been able to do any manual labor of any kind since the last operation.

"There were several expert witnesses for both the plaintiff and the defendant. For the plaintiff, Doctors Cappel and Pincus state that on three or four occasions they have examined the plaintiff and that they found a complete and perfect operation for hernia on the left side and a scar about three inches long. On the right side they found where the plaintiff had been operated on for hernia and a scar about six inches long. In the upper two-thirds of this scar they found a separation of the muscles and fascia and a bulging on the right side, which they term a post operative herniation; that it would not only be injudicious, but it would be very hazardous for the plaintiff to do any manual labor, and they advised against manual labor. Dr. Kittrell, who does industrial work for the Good Pine Lumber Company, and Dr. Floyd, who is a local doctor at Jena, both examined the plaintiff, and in their testimony they back up the statements of Doctors Cappel and Pincus, stating there is a bulging on the right side and a separation of the muscles and fascia, and it would be hazardous for the plaintiff to do manual labor. Some of these doctors said that instead of the plaintiff growing better in time, he will most likely grow worse.

"For the defendant, Dr. Willis, who performed the operation, and Dr. Trax, the local doctor for the defendant company, stated that there was no post operative herniation effect on the plaintiff, that the operation was a success, and that the plaintiff, in their opinion, was able to do

manual labor. Dr. Pierce, who testified for the defendant, states that there is a bulging on the right side but he would not call this bulging a post operative herniation; that the plaintiff is in such a condition that he would not pass him for work in any industrial line except for the company that he was working for at the time he received the said alleged injury; but if he were the doctor for the defendant company he would pass him and recommend him for work, but for any new industry he would not.

"Doctor Willis states that the plaintiff was suffering from a congenital hernia. In other words, the hernia that the plaintiff had was an enlargement or dilation of the right inguinal ring and that same was due to a congenital weakness.

"When this plaintiff began work he stood a first-class physical examination in 1933, and in June, 1935, the left inguinal ring would permit the small finger to enter, but the right ring was perfectly closed, according to the examining doctor's report. The plaintiff continued his manual labor, and without any complaint, until the 26th of October, 1937, when, in a stooping position pulling at a heavy plank, there being an abdominal strain or pressure, he felt a tearing and burning sensation and suffered great pain down in his abdominal quadrant; and on examination shortly after he was informed that he had a complete hernia on the left side and enlargement of the ring on the right. From the testimony there is little doubt that straining at the turning of the plank caused a complete hernia on the left, and it matters not whether it was congenital or not, for this labor certainly superinduced, aggravated and accelerated the development into a complete hernia. In fact, if there is such a thing as congenital hernia, that must be at the time the child is born. This plaintiff, at the age of 33 years, upon physical examination disclosed no physical findings or any congenital hernia. One may inherit a congenital background or weakness for a hernia but unless the child has a hernia at birth it could not be what we term a congenital hernia. We presume that a person who has a congenital background or weakness for a hernia would develop a hernia with less strain or less trauma than one who did not inherit such weakness, but in law it makes no difference whether the employee receives a trauma that would cause a hernia with-

in itself, or whether the tissues had already become thin and that pressure was only sufficient to accelerate the hernia, for under the Compensation Act the employer would be liable.

"Since the plaintiff had a physical examination on two occasions, one in 1933 and the other in 1935, by the doctor of the defendant company, and on each of these occasions his right inguinal ring was what is termed perfect and disclosed no enlargement or dilation then, from the evidence we cannot find any reason why this right ring would have been so enlarged and dilated if it had not been caused by the abdominal strain that he received on October 26th, 1937. And we conclude that on this occasion he not only suffered a complete hernia to the left side, but that the condition of the right ring was damaged and made worse, which induced Dr. Willis to perform an operation on the right side also.

"A consideration of the testimony and the preponderance of the testimony points conclusively to the fact that the plaintiff is now disabled from doing manual labor and that this condition is likely to continue through his life.

"For these reasons there shall be judgment for the plaintiff granting compensation for the plaintiff for 65% of his wages for a period not to exceed four hundred weeks from the 26th day of October, 1937; and the defendant is entitled to a credit on this judgment for the compensation previously paid and the amount of wages paid the defendant from the 24th of January, 1938, until the 14th day of April, 1938.

"F. E. Jones, Judge."

From a judgment in accord with the opinion, defendant prosecutes this appeal.

Defendant's doctor pronounced plaintiff well on July 17, 1938, and defendant ceased compensation payments. The testimony greatly preponderates in favor of plaintiff's contention that he is totally disabled. There is a protrusion over the upper two-thirds of the operative scar on the right side. Some of the doctors define it as a post-operative herniation. Others think it is due to the weakened wall and is not a complete herniation. It matters not whether it is a herniation or not. It is shown to be a condition that has existed ever since the second operation and that it has totally disabled plaintiff from per-

forming manual labor such as he was engaged in at the time of the accident and injury. The first operation and the second operation were made necessary by the injury, and it has been shown that a third operation is not advisable.

It is enough that we find plaintiff's injury was caused by an accident and that, although defendant has furnished him with treatment and operations, he is still disabled. There is no denial of the fact that if the accident occurred as we found it did, it was while plaintiff was performing duties within the scope and course of his employment with defendant. It would be a waste of time for us to again review in this opinion the facts which we find the lower court has correctly found and reduced to writing, as above quoted.

There is no error in the judgment of the lower court and it is affirmed with costs.